IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN ELBERT BROYLES II,

           Plaintiff,

vs.                                             Case No. 17-3174-SAC

COLE PRESLEY, TINA MILLER,
CITY OF SALINA, and
STATE OF KANSAS,

           Defendants.

MEMORANDUM AND ORDER

When the plaintiff John Elbert Broyles II filed his civil rights complaint, 42 U.S.C. § 1983, he was an inmate at the Graham County Jail. ECF# 1, p. 1. After the court's screening order, Mr. Broyles informed the court that he had been returned to Saline County Jail. ECF# 12, p. 1. Even more recently, the court has learned from Mr. Broyles' filings that Saline County has again transferred him to another county's facility. Mr. Broyles is currently housed at Cloud County Jail. In his latest letter addressed to the Clerk of the Court, Mr. Broyles asks if he is "allowed to include the Cloud County Jail" and its employees as defendants in this case. ECF#18. Having filed a separate complaint that alleges unrelated events separate and distinct in time, facility and actors, the court filed Mr. Broyles' complaint as a separate action. *See Broyles v. Marks*, No. 18-3030-SAC. In the instant case, Mr. Broyles claims are limited to those which he has alleged in his original complaint.

1

**BACKGROUND**

As filed, Broyles' complaint names four defendants in his caption, but his factual allegations can only be linked with two of them, Cole Presley, as sheriff and administrator of Graham County Jail, and Tina Miller, as supervisor of classifications for diet and administrative status at Saline County Jail. ECF# 1. Consequently, on its screening, the court dismissed the other two named defendants, City of Salina and State of Kansas. ECF# 6, pp. 5-6.

Broyles' complaint includes three causes of action. For his first count, he alleges his First Amendment right to follow the dietary tenets of his Jewish religion were violated when he was serving his sentence at the Saline County Jail and receiving Kosher meals only to have the Saline County Jail transfer him to the Graham County facility where no Kosher meals were provided. He made numerous grievances to both jails asking for a transfer back to Saline County Jail and for a kosher meal to be provided, but his grievances and requests were ignored. For his second count, he alleges the confinement conditions at the Graham County Jail violated his Eighth Amendment rights. Specifically, he was denied recreation and outdoor exercise and denied a proper nutritional diet because all food was prepared by "microwave" and was "totally unhealthy." For his third count, he alleges his Fourteenth Amendment right to equally exercise his religion practices the

same as other prisoners in Saline County jail "or [in] any other facility of confinement" were violated. ECF# 1, p. 6.

As for the factual allegations in his complaint, Broyles says he was serving a jail sentence at Saline County Jail since November 21, 2016, when he was transferred to the Graham County Jail on June 27, 2017. *Id.* at p. 3 He practices the "Jewish faith, 'Yahweh Assembly in Yahshua'" and "adhere(s) to a strict 'kosher' religion diet." *Id.* at p. 2. At the Saline County Jail, he had been receiving a "partial 'Kosher' diet." *Id.* at p. 3. As evident from the above summary, Broyles' complaint includes no claim based on the Kosher meals received at the Saline County Jail. Instead, his only claim related to the Saline County Jail is based on his transfer to a facility where his kosher diet requirements could not be met and on the denial of his requests for another transfer. Regarding the Graham County Jail, Broyles complains about the lack of Kosher meals and the following conditions:

> The entire diet (menu) this facility offers is prepared by microwave oven. They provide no milk, fresh vegetables or fruits. No nutrients whatsoever! Lastly, no space or recreation area, nor opportunity to go outside or to a specific recreation area.

ECF# 1, p. 3. He alleges having filed grievances with both jails seeking transfers back to the Saline County Jail. He denies receiving formal responses to his grievances. For relief, Mr. Broyles requests housing "at a facility that provides a Kosher diet" and monetary awards from Saline County Jail, Graham County Jail, and the State of Kansas. *Id.* at p. 7.

3

Pursuant to its statutory duty, the court initially screened Broyles' complaint looking for any claim that was "frivolous, malicious, or fails to state a claim upon which relief can be granted" or that sought "monetary relief from a defendant who is immune from such relief," 28 U.S.C. § 1915A(b). The court applied the following standards. A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All well-pleaded allegations in the complaint are accepted as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). But, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted).

In its screening order, the court noted that it appeared that Mr. Broyles could allege against a Saline County Jail official a claim for knowingly transferring him to interfere with the exercise of his religious belief in a kosher diet and for then not transferring him back after he complained about the lack of a kosher diet. The court also said it appeared that Mr. Broyles could allege against a Graham County Jail official a claim for failing to provide him a kosher diet and for denying him all outside exercise for

months. The Court, however, found that the proper processing of these claims could not go forward without additional information from appropriate officials at both jails. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). The *Martinez* report was to provide an opportunity for jail officials to investigate the events in question and to construct an administrative record from that investigation. *Id.* at 319. This report's purpose is to create a sufficient record from which "to ascertain whether there are any factual or legal bases for the prisoner's claims.'" *Breedlove v. Costner*, 405 Fed. Appx. 338, 343 (10th Cir. 2010) (unpub.), *cert. denied*, 563 U.S. 965 (2011) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)). "This process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn pro se complaints, not to resolve material factual issues." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (citation omitted).

The defendant B. Cole Presley, sheriff of Graham County, Kansas, averred that his office is responsible for operating the county jail which is the only detention facility in Graham County. His office is comprised of three full-time and one part-time law enforcement officers and four full-time dispatchers. None of the employees work full-time in jail operations, and both dispatchers and officers "share the responsibility of meal and medication preparation and management." ECF# 9, p. 2. Graham County has contracted with Saline County to hold inmates, and the plaintiff came to

5

Graham County jail pursuant to this contract hold. When Mr. Broyles arrived, he informed staff of his religious requirements for diet, and he was told the jail could only accommodate the requirement of no pork products being served. Sheriff Presley avers that substitute products were purchased and served and that the plaintiff's daily menu was adjusted with only one recorded incident of pork sausage being provided accidentally. Sheriff Presley avers that a review of the plaintiff's complaints or requests show he first requested a transfer back to Saline County on September 18, 2017. In that request, Mr. Broyles stated that he had made multiple attempts for transfer. Sheriff Presley concedes that Graham County jail has no "outside exercise area of any kind to afford inmates a dedicated area to be outside in a secure manner." ECF# 9, p. 4. He further states:

> Given the small area within the jail, when the population is at 12, exercise can be difficult. As this applies to Mr. Broyles, a weekly census of the jail population shows an average weekly population of 4 inmates providing for the space needed to exercise with plenty of space (Exhibit H). A review of complaints or requests from Mr. Broyles file (Exhibit E) also shows that no request to go outside or for other accommodations for exercise have been made by him.

ECF# 9, p. 5.

Mr. Broyles has filed a lengthy response to Sheriff Presley's affidavit. ECF# 16. He primarily argues inferences to be drawn from the affidavit and from the attached exhibits and admissions as showing that the jail was not equipped to and failed to provide him Kosher meals. He notes that the jail did not provide Kosher meals but only attempted to remove

6

pork products from his meals and occasionally failed at this. Mr. Broyles is also critical of the jail staff's efforts at communicating with and securing his transfer back to Saline County because of his unmet dietary needs. Finally, he alleges jail staff refused his grievances.

Brent Melander, undersheriff of Saline County, Kansas submitted his affidavit in response to the court's request for a *Martinez* report. He avers that Broyles did not indicate a religious preference upon initial booking but that he requested a kosher diet after booking and did receive a kosher diet at the Saline County jail until his transfer in June of 2017. With regards to transferring Mr. Broyles, Mr. Melander avers:

> 8. When the inmate population at the Saline County Jail becomes high, inmates are selected for transfer to alternative housing facilities.
> 9. A number of factors go into selection of inmates for transfer including inmates who are not a problem at the jail, inmates without upcoming court dates, and inmates with no medical concerns.
> 10. Plaintiff met the criteria to be transferred because he was sentenced until May of 2018 and had no other court appearances. Because Plaintiff did not have any court appearances, Graham County was selected to avoid travel between the jails.
> 11. The sole reason Plaintiff was transferred to Graham County was to alleviate overcrowding at the Saline County Jail.
> 12. Plaintiff was transferred back to Saline County on December 5, 2017 for a medical issue. Plaintiff currently resides in the Saline County Jail in order to address some of his medical issues.
> 13. If there is an overcrowding issue again and Plaintiff meets the criteria for transfer, he may be transferred to another housing facility.
> 14. Saline County has not violated Plaintiff's religious rights as his transfer was due to overcrowding in the Saline County Jail.

ECF# 13, p. 2.

Mr. Broyles has filed a response to this *Martinez* report too. He disputes the booking date found in Melander's affidavit as contradicted by

7

his journal entry of conviction. Mr. Broyles now asserts that Saline County transferred him to Ottawa County Jail on December 12, 2016, and that his later transfer in June of 2017 to the Graham County Jail was not from the Saline County Jail but from the Ottawa County Jail. ECF# 17, p. 2. This latest assertion stands in contrast to what Broyles alleged in his complaint as of October 2, 2017, "I was transferred to the Graham County, on June 27, 2017. But, I have been detained at the Saline County Jail, since November 21, 2016." ECF# 1, p. 3. Broyles, however, acknowledges that his "religious tenets were always accommodated" at the Ottawa County facility, and "he has never directed a claim until, his transfer to the Graham County facility." ECF# 17, p. 3. Broyles notes that the known religious diet requirements of an inmate are not a listed factor in Saline County's decision to transfer. Broyles also highlights the absence of any explanation for not addressing his grievances and requests for a transfer to a facility where his kosher diet needs could be met.

   In December of 2017, Mr. Broyles notified the court that his address had changed to Saline County Jail. ECF# 10. Over the next three weeks, he sent two letters to the court that were filed. ECF#11 and 12. In those letters, Mr. Broyles complains about the Saline County Jail's failed attempts to provide Kosher meals to him and about the Jail's officers acting in what he believes is retaliatorily motivated.

The record shows two filings subsequent to the *Martinez* reports and responses. One is a letter from Broyles to the Clerk of the Court asking to add the Cloud County Jail to his and its employees to this action or having his claims filed as a separate action. ECF# 18. In this letter, Broyles asks the court to enter a protective order that would prevent his removal from Cloud County Jail until this case is resolved. The other filing is the answer of the defendant Tina Miller. ECF# 19.

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). The Tenth Circuit has recognized "that an inmate's right to free exercise of religion includes the right to a diet that conforms with their religious beliefs." *Id.* at 1070 (citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (reversing dismissal of First Amendment claims stemming from a denial of Jewish inmates' request for a kosher diet). To allege a claim that his right to free exercise of religion was violated, the plaintiff inmate "must adequately allege that the defendants 'substantially burdened [his] sincerely held religious beliefs.'" *Gallagher*, 587 F.3d at 1069 (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, a plaintiff must allege more than "isolated act[s] of negligence" in order to establish a substantial burden. *See Gallagher*, 587 F.3d at 1070.

The official capacity claim for damages against Sheriff Presley is subject to dismissal under the Eleventh Amendment. Claims for damages against state employees in their official capacities are regarded as claims against the state and are thus likewise barred by the Eleventh Amendment. It is well established that official capacity "claims for . . . , monetary damages, and retroactive declaratory relief are barred by the Eleventh Amendment." *Meiners v. University of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004). The Tenth Circuit has afforded Eleventh Amendment immunity to Kansas county jails and sheriffs. *See Hunter v. Young*, 238 Fed. Appx. 336, 338 (10th Cir .2007). *See also Nielander v. Board of County Com'rs of Republic, Kan.*, 582 F.3d 1155 (10th Cir.2009) (reaching same result as to Kansas county attorneys). The court agrees with this analysis:

> Created by the state legislature through Article 9 § 2 of the Kansas Constitution and employing discrete and autonomous powers recognized by statute, Kansas sheriffs are state officers supported by particular provisions in the state statutes. *See Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir.2007). Although these officers are locally funded, and generally operate in their particular county, these factors are respectively not dispositive or of limited importance. *McMillian v. Monroe County*, 520 U.S. 781 (1997). *See Wilson v. City of Chanute*, 43 F.Supp.2d 1202, 1216 (D. Kan. 1999). More importantly, sheriffs are state officers given particular charge of jails under state statutes. The court finds that, as to the charges advanced here, Bitler is protected by the Eleventh Amendment.

*Self v. County of Greenwood*, 12-1317-JTM, 2013 WL 615652, at *2 (D. Kan. Feb. 19, 2013). Eleventh Amendment immunity is subject to the exception of *Ex parte Young*, 209 U.S. 123 (1908), which permits suits

against state officials in their official capacity "seeking to enjoin alleged ongoing violations of federal law." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011). A claim for monetary damages against the defendant Presley in his official capacity is dismissed.

As for any official capacity claim against Ms. Miller, the plaintiff in advancing a § 1983 claim against a municipality must show that he was harmed by an official policy. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Liability exists "only where the municipality itself causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95) (emphasis in original). To bring a claim for a subordinate municipal actor's role, the plaintiff must allege: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199–1200 (10th Cir. 2010). The plaintiff's complaint fails to allege any municipal liability against the defendant Miller. *See Hachmeister v. Kline*, 2013 WL 237815 at *4.

Insofar as any damage claims against the defendants Presley or Miller in their individual capacities, the plaintiff has failed to allege facts sufficient to support a claim for compensatory damages under the Free Exercise clause. Federal law precludes prisoners from bringing federal

11

actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This court has held:

> Plaintiff fails to state sufficient facts to support a claim for compensatory damages under the Free Exercise Clause. This is because federal law prohibits prisoners from bringing federal actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Tenth Circuit has held that this limitation on recovery applied to a plaintiff's First Amendment claim that prison officials denied him a Kosher diet (*Ciempa*, 745 F.Supp.2d at 1201) (citing *Searles v. Van Bebber*, 251 F.3d 869, 876–77 (10th Cir.2001)) and to claims for actual or compensatory damages. *Searles*, 251 F.3d at 879, 881; *see also, Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir.), *cert. denied*, 133 S.Ct. 359 (2012); *Nasious v. Robinson*, 2010 WL 1268135, *8, n. 6 (D. Colo. Feb. 17, 2010) (unpublished), *aff'd in part dismissed in part*, 396 Fed. Appx. 526 (10th Cir. Sept. 29, 2010). Mr. Hughes has not described any physical injury caused by the alleged deprivations of his constitutional rights. Accordingly, his claims for actual or compensatory damages are subject to being dismissed unless he presents additional facts showing a prior physical injury.

*Hughes v. Heimgartner*, 2013 WL 760600, at *3 (D. Kan. Feb. 27, 2013). As in *Hughes*, Broyles here has not alleged any physical injury, and the *Martinez* report is devoid of any circumstances, events, or details from which to infer any possibility of a physical injury. Broyles' claims in his original complaint fail to allege any factual and legal basis for compensatory damages, and there appears to be nothing of record established by the *Martinez* report and Broyles' response that would support the same. In sum, the claims for compensatory damages are dismissed, because neither the specific allegations in the complaint nor the facts as presented plausibly support any such claim.

In alleging constitutional violations, the plaintiff's complaint must include "facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The plaintiff must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Id.* at 1250. "Allegations of personal participation, like all other factual averments, must be specific, not conclusory." *Hachmeister v. Kline*, 2013 WL 237815 at *3 (D. Kan. Jan. 22, 2013) (internal quotation marks and citations omitted). The plaintiff's complaint is vague in alleging what either defendant specifically did to violate his constitutional rights.

The complaint identifies Ms. Miller as classifications administrator, but then refers to the "Saline County Jail" as deciding to transfer him and as refusing his requests for transfer from Graham County Jail. In his response to Undersheriff Melander's affidavit, Mr. Broyles mentions Ms. Miller's involvement only in his initial booking to the Saline County Jail, but there is no claim alleged in his complaint as to his status or food received while at the Saline County Jail. Mr. Broyles does not allege that Ms. Miller is responsible for the decision to transfer him to Graham County Jail or for the refusal to act upon his grievances and transfer him

13

back to Saline County Jail. He does not allege that Ms. Miller instituted any policy for transferring inmates without consideration for their religious dietary requirements or that she is responsible for Graham County Jail not providing kosher meals. Indeed, there is nothing alleged in the complaint and nothing found in the *Martinez* report or in Mr. Broyles' response to show Ms. Miller's involvement in the transfer decisions or in the denial of his transfer requests. For that matter, the plaintiff's complaint is devoid of allegations that shows his transfer and denial of transfer were done consciously and intentionally to interfere with his free exercise rights. *Gallagher*, 587 F.3d at 1069. Absent such allegations, Mr. Broyles' complaint fails to state a factual or legal basis for a First Amendment violation against Ms. Miller under § 1983. *See Watkins v. Rogers*, 525 Fed. Appx. 756, 759 (10th Cir. 2013). Nor has Mr. Broyles alleged any individual actions taken by Sheriff Presley as to show personal involvement under § 1983, which "does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

Finally, as to any claim for prospective injunctive relief against Sheriff Presley, it is subject to dismissal for mootness. The Tenth Circuit has held:

> Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief. Because a prisoner's transfer or release "signal[s] the end of the alleged deprivation of his constitutional rights," *McKinnon v. Talladega Cnty.*,

> *Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984), an entry of equitable relief in his favor "would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him." *Green* [*v. Branson*], 108 F.3d [1296] at 1300 [(10th Cir. 1997)]. Consequently, courts have routinely dismissed such penitentiary-specific conditions-of-confinement claims as moot. See *Sossamon v. Texas*, [563] U.S. [277], 131 S.Ct. 1651, 1669, 179 L.Ed.2d 700 (2011) ("A number of … suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits."); *accord Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir.), *cert. denied*, [562] U.S. [967], 131 S.Ct. 469, 178 L.Ed.2d 298 (2010); *Green*, 108 F.3d at 1300; *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief is moot if he or she is no longer subject to those conditions."); *see also Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (concluding that plaintiff's "claims for injunctive relief to correct procedures and practices at [the Federal Detention Center in Oakdale, Louisiana] facility [were] moot" because he had subsequently been transferred out of that facility).

*Jordan v. Sosa*, 654 F.3d 1012, 1027–28 (10th Cir. 2011) (footnotes omitted). Mr. Broyles is no longer incarcerated at Graham County Jail where the defendant Presley serves as the jail administrator. Any prospective injunctive relief ordered against Presley would have no effect on his actions toward the plaintiff. Therefore, the claim for injunctive relief is dismissed.

IT IS THEREFORE ORDERED that the plaintiff's claims under 42 U.S.C. § 1983 are dismissed pursuant to § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Dated this 6th day of March, 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge